ACCEPTED
03-15-00385-CR
8214204
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/14/2015 9:16:24 AM
JEFFREY D. KYLE
CLERK

No. 03-15-00385-CR

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT OF
TEXAS AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/14/2015 9:16:24 AM
JEFFREY D. KYLE
Clerk

********

# KARL LEE WIGGINS

## VS.

# THE STATE OF TEXAS
********

ON APPEAL FROM THE 27th DISTRICT COURT
OF BELL COUNTY, TEXAS
Cause No. 72,941

******

# STATE'S BRIEF
******

HENRY GARZA
DISTRICT ATTORNEY

BOB D. ODOM
ASSISTANT DISTRICT ATTORNEY
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

*Oral Argument Not Requested*

# TABLE OF CONTENTS

**ITEM**                                                                                              **PAGE**

Index of Authorities ................................................................................................   3

Statement Regarding Oral Argument ..................................................................   4

Statement of the Case ...........................................................................................   4

Statement of Facts .................................................................................................   5

Summary of State's Argument ..............................................................................   8

Argument and Authorities .....................................................................................   8

    Issue on Appeal ..............................................................................................   8
        APPELLANT RECEIVE INEFFECTIVE ASSISTANCE
        OF COUNSEL FOR FAILURE TO OFFER EVIDENCE
        OF POSSIBLE DEFECT IN WEAPON IN MITIGATION
        OF PUNISHMENT?

    Standard of Review ........................................................................................   9

    Application and Analysis ...............................................................................   10

Prayer .....................................................................................................................   20

Certificate of Compliance with Rule 9 ................................................................   21

Certificate of Service ............................................................................................   21

# INDEX OF AUTHORITIES

**CASES**                                                                 **PAGE**

*Castenada v. State,* No. 01-14-00389-CR, ..........................................    16
    2015 Tex. App. LEXIS 11615 (Tx. App. Houston 1st
    Dist. 2015 no pet.), not designated for publication.

*Johnson v. State*, 4 S.W.3d 254 (Tx. Cr. App. 1999) ..........................    13

*Ex Parte Kunkle*, 852 S.W.2d 499 (Tx. Cr. Ap. 1993) ........................    14

*Milburn v. State*, 15 S.W.3d 267 ...................................................13-14, 16
    (Tx. App. Houston 14th Dist. 2000 rev. ref.)

*Strickland v. Washington*, 466 U.S. 668 (1982) .................................  9-10

*Smith v. State*, 286 S.W.3d 333 (Tx. Cr. App. 2009) .......................... 15-16

*Thompson v. State*, 9 S.W.3d 808 (Tx. Cr. App. 1999) ........................    9

*Torres v. State*, No. 01-95-00862-CR, ................................................... 16-18
    2000 Tex. App. LEXIS 8574 (Tx. App. Houston 1st
    Dist. 2000 rev. ref.), not designated for publication)


**OTHER**

*Texas Penal Code*

    Section 12.32 ...................................................................    11

    Section 12.42 (d) .............................................................    11

    Section 19.02 (b)(3) ........................................................    10

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument.

## STATEMENT OF THE CASE

The Appellant, Karl Lee Wiggins, was charged by indictment with murder.  The indictment was amended to add paragraph II that charged that the Appellant "....did then and there commit or attempt to commit a felony, to-wit:  Aggravated Assault and in the course of and in the furtherance of the commission or attempted commission of Aggravated Assault he committed or attempted to commit an act clearly dangerous to human life, to-wit:  waving, pointing, and threatening with a loaded firearm, that caused the death of an individual, to wit:  Edward Charles Herman." (CR Supp-3).

The Appellant waived a jury and entered a plea of guilty before Judge John Gauntt in the 27th District Court of Bell County, Texas to the offense alleged in paragraph II of the indictment. (CR-41; RR4-9, 10).  He judicially confessed to the commission of the offense as alleged. (CR-46; RR4-10).  The trial court found the evidence sufficient to find the Appellant guilty, ordered a presentence investigation report, and recessed the hearing. (RR4-10, 11).

After the subsequent punishment hearing the trial court found the Appellant guilty and assessed his punishment at life in the Texas Department of Criminal Justice. (CR-68; RR5-AV-12).

The Appellant filed a Motion for New Trial, which was denied after a hearing by the trial court (CR-79; RR6-53). Although the State agreed not to pursue the allegations in its Notice to Enhance Punishment (CR-17) in exchange for the Appellant's plea of guilty (CR-41), the trial court certified his right to appeal (CR-67) and stated for clarification on the record it was the court's intent to give the Appellant permission to do so. (CR6-52).

## STATEMENT OF FACTS

The Appellant, his sister Elizabeth Gallagher, and her common law husband, Edward Charles Herman were living together in a small cabin. After a day of steady drinking, an argument broke out between the Appellant and Herman. (RR5-29, 30). At some point during that argument the Appellant left the cabin and returned with a loaded .25 caliber semi-automatic pistol. (RR5-31). When the Appellant pointed the gun at Herman, Herman asked if it was even loaded. The Appellant

responded that it was loaded and ready. (RR5-31, 32). The Appellant kept waving the gun around at Herman. (RR5-32, 33).

Eventually, Herman got up and said, "Whatever, Lee. Whatever you want to do, Lee, I'm not afraid to die". Herman put his head down to the gun. The Appellant fired and Herman fell to the floor. (RR5-34). There was no struggle over the gun. He simply pulled the trigger and the victim went down. (RR5-37). It was not necessary for the Appellant to rack a shell into the chamber of the pistol after he entered the cabin. (RR5-38). The Appellant then told Ms. Gallagher that he did not mean to do it. (RR5-35). "Lee" referred to the Appellant. (RR5-34).

During the punishment phase of the trial, the State called David Cheadle, the manager of the largest gun shop in central Texas with at least 11 years of experience in inspecting and doing minor repairs to firearms. (RR5-11). Cheadle had examined State's Exhibit 2, the .25 caliber automatic pistol recovered at the scene of the murder. (RR5-12). He tested the trigger pull of the weapon and found it to be necessary to exert 7¼ pounds on the trigger to fire the weapon. (RR5-15). He characterized this as a very heavy trigger pull. (RR5-15). Cheadle stated no one had indicated any problem with the safety of the weapon and that the gun seemed to be in working order. (RR5-16).

In the hearing on the Motion for New Trial the Appellant introduced a Texas Department of Public Safety Ballistics Report that noted that the weapon was operational "with a malfunction of the quarter cock safety noted during test firing." (Defendant's Exhibit 1). The Appellant's two trial attorneys, Joseph Weiner and Bobby Barina testified that they had received full discovery from the State and were aware of the ballistics report. (RR6-15, 17).

Mr. Weiner testified that there was no evidence that the gun went off half-cocked (RR6-25) and pointed out that the Appellant's plea was to "felony murder" with a lesser culpable mental state. (RR6-27). He stated that he was prepared to pursue manslaughter as a lesser included offense and use the ballistics report as evidence in the event of a trial and plea of not guilty, however, the attorneys and the Appellant had concluded that it was better to plead guilty to felony murder with no enhancements than to seek a manslaughter conviction enhanced to a punishment range of 25 years to life. (RR6-29). Mr. Barina noted that the gun had tested to be in working order and with a heavy trigger pull. He concurred with the plea to felony murder. (RR6-35, 47).

7

# SUMMARY OF STATE'S ARGUMENT

The Appellant has failed to show that his trial counsel's conduct was deficient in that it fell below an objective standard of reasonableness. Counsel was aware of, and had evaluated the evidence and made a reasonable strategic decision in not offering the ballistics evidence at the punishment hearing. It cannot be said that no reasonable attorney would have employed that strategy.

The Appellant has wholly failed to show by a preponderance of the evidence that counsel's performance prejudiced him and has not shown a reasonable probability that but for counsels alleged unprofessional performance the result of the proceedings would have been different. The same judge who assessed the punishment heard the motion for new trial and the evidence alleged to have been improperly ignored and denied the motion. Clearly, had that evidence been presented at the punishment hearing, there is no reasonable probability that the punishment assessed would have been different.

# ARGUMENT AND AUTHORITIES

## *First Issue on Appeal*

8

Did the Appellant receive ineffective assistance of counsel for failure to present evidence at the punishment hearing of a possible defect in the quarter-cocked safety of the weapon in mitigation?

***Standard of Review***

In order to establish ineffective assistance of counsel, the Appellant must prove by a preponderance of the evidence: (1) that his trial counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced him to such a degree as to deprive him of a fair trial. Such prejudice is demonstrated when the defendant shows a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1982); *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tx. Cr .App. 1999).

The Appellate Court does not view trial counsel's performance by hindsight, but rather upon the facts of the particular case as they were at the time of counsel's conduct. *Thompson* at 813. The Appellate Court must be highly deferential to the judgment of counsel and must

presume that counsel's actions fell within a range of reasonable and professional assistance.

## *Application and Analysis*

It must be noted at the outset that the Appellant does not contest the voluntariness of his plea of guilty on appeal nor the sufficiency of the evidence, but only the alleged ineffectiveness of his trial counsel with respect to failure to call a witness from the DPS laboratory to testify that there was a malfunction in the quarter-cock safety of the murder weapon in mitigation of punishment.

*Strickland* imposes upon the Appellant the duty to show, by a preponderance of the evidence, both that his trial counsel's performance was deficient in that it fell below an effective standard of reasonableness; and that counsel's performance prejudiced him to such a degree that it deprived him of a fair trial.

## *Counsel's Performance*

The Appellant has failed in his burden to show that trial counsel's performance fell below an objective standard of reasonableness given the circumstances of the case. The Appellant had agreed to enter a plea of guilty to murder under Section 19.02(b)(3) of the *Texas Penal Code*. That section applies when a person commits or attempts to commit a

felony, other than manslaughter, and in the course of and in furtherance of that commission or attempt, commits or attempts to commit an act clearly dangerous to human life, and causes the death of an individual.

In exchange for his plea to that offense, the State agreed not to pursue the allegations in the notice of enhancement. That notice alleged two prior felony convictions in proper order to raise the punishment range for murder to 25 years of life in prison. Section 12.42(d), *Texas Penal Code.* By virtue of the plea agreement the minimum punishment was 5 years as opposed to 25 years. Section 12.32, *Texas Penal Code.* The same 25 to life range would have applied even had counsel pursued a reduction to manslaughter by virtue of the alleged malfunction in the weapon.

The agreement to plead guilty to felony murder, without enhancement and the State's abandonment of the first paragraph of the indictment charging intentional and knowing murder (RR4-5), removed the necessity for the State to prove that he had intentionally or knowingly caused the death of the victim. Instead, the State only had to prove the commission or attempt to commit the felony and the act clearly dangerous to human life, and the resultant death of the victim. This certainly removed any issue as to the possibility that the safety

might have malfunctioned on quarter-cock as the act clearly dangerous to human life, the waving, pointing, and threatening the victim with a loaded firearm, would be in no way negated by such a possible malfunction. Thus, the Appellant's argument that his trial counsel failed to rebut the testimony that the pistol was in working order had little or no relevance to the offense as charged in paragraph II of the indictment and as admitted by him. Nor would that evidence have mitigated the punishment.

There was no evidence even remotely suggesting that a malfunction occurred at the time of the offense. The Appellant's statements that he did not mean to do it hardly raise an issue that the murder resulted from a defective gun. They do not mitigate the particular offense because they have nothing to do with the Appellant's commission of an act clearly dangerous to human life. Waving, pointing, and threatening another with a loaded gun is such an act whether there was a possible malfunction or not. The Appellant's self-serving denial of intent and of "meaning to do it" had no bearing because the culpable mental state of murder was not an element of the offense of felony murder. The felony murder rule dispenses with the necessity of proving mens rea accompanying the homicide itself, the underlying felony

supplies the culpable mental state. *Johnson v. State*, 4 S.W.3d 254, 255 (Tx. Cr. App. 1999).

The Appellant's reliance upon *Milburn v. State*, 15 S.W.3d 267 (Tx. App. Houston 14th Dist. 2000 rev. ref.), is misplaced. In that case counsel did not call any witnesses at the punishment hearing, although numerous were available and willing to speak on the defendant's behalf. Instead they merely sought stipulations that some 21 people would testify to his character. The Houston court held that counsel's performance was ineffective for failure to even evaluate available mitigation testimony so as to determine if it would be helpful and, as a result of such a lack of preparation there was no evidence before the jury to offset the State's punishment evidence. *Milburn* at 270.

In this case, however, the Appellant's counsel was aware of the DPS ballistics report and had been prepared to raise the issue had the case gone to trial on a plea of not guilty in order to seek a lesser included manslaughter verdict. (RR6-23, 24). When they were able to negotiate a plea lowering the Appellant's exposure to a higher range of punishment, they concluded that the evidence was no longer germane to the issues in the case and not mitigating at all. Unlike in *Milburn,* however, they did not leave the fact finder with nothing to consider in

mitigation.  Counsel called the Appellant's sister to testify about the relationship of the parties, their intoxicated state at the time of the offense and the circumstances under which it had occurred.  They also called the Appellant's brother for family background in mitigation.

Counsel is not ineffective for failing to present mitigating evidence when the decision a strategic and deliberate one made after a thorough investigation of the facts and the law. *Ex Parte Kunkle*, 852 S.W.2d 499, 506 (Tx. Cr. App. 1993).  In *Milburn* counsel admittedly had not investigated or evaluated punishment evidence at all, let alone presented it. *Milburn* at 270.  Here, counsel was aware of and had considered the ballistics report, but made a reasonable strategic decision to dispose of the case in a way that rendered that report less probative and irrelevant.  Counsel did review and present other mitigation evidence.  Such a decision falls within the wide range of reasonable professional conduct.

It cannot be said that the Appellant has shown by a preponderance of the evidence that no reasonably competent attorney would have chosen to forego testimony concerning the ballistic report in light of the circumstances of the case and the mode of its disposition.

*Prejudice*

It is also incumbent on the Appellant to show that his counsel's alleged unprofessional errors prejudiced him to such a degree that he was deprived of a fair trial. To do so he must show that there is a reasonable probability that, but for those errors, the results of the proceedings, in this case the punishment assessed, would have been different.

In this case the trial court was the fact finder and assessed punishment. The court also heard and denied the motion for new trial. In *Smith v. State*, 286 S.W.3d 333 (Tx. Cr. App. 2009), the Court of Criminal Appeals reviewed the decision of the trial court not to hold a hearing on a motion for new trial as to punishment and to deny the motion based upon the affidavits attached and the record. In that case the trial court had heard the issue of punishment. The Court of Criminal Appeals observed:

> "Only the trial judge in this case could have known what factors he took into consideration in assessing the original punishment, and only he would know how the defendant's testimony, if allowed, might have affected that assessment. When the trial judge declined to hold a hearing on the appellant's motion for new trial, we presume that he knew from the affidavits what the appellant's testimony at the hearing would be, and that, even assuming any such testimony to be accurate and reliable, knew that it would

15

> not have influenced his ultimate normative judgment. In that event, the trial court could have concluded, without the necessity of a hearing, that the appellant suffered no prejudice from any deficiency on his trial counsel's part with respect to the assessment of punishment for the original offense." *Smith* at 344-45.

See also *Castenada v. State,* No. 01-14-00389-CR, 2015 Tex. App. LEXIS 11615 (Tx. App. Houston 1st Dist. 2015 no pet.), not designated for publication (holding that the defendant failed to show harm when the judge who sentenced him also denied his motion for new trial for ineffective assistance, and declining to follow *Milburn* because in that case the jury assessed punishment.).

In this case the same judge who sentenced the Appellant to life for murder actually heard the testimony on the motion for new trial and reviewed the ballistics report, but denied the motion. As noted in *Smith*, the judge alone knew the factors he took into consideration in sentencing the Appellant and he certainly was in a position to know whether evidence concerning the ballistic report would have been reasonably likely to produce a different result. By denying the motion the trial court clearly indicated that it would not.

The Appellant relies heavily upon *Torres v. State*, No. 01-95-00862-CR, 2000 Tex. App. LEXIS 8574 (Tx. App. Houston 1st Dist. 2000

16

rev. ref.), not designated for publication.  In that case the appellate court held that counsel was ineffective for failing to present ballistic evidence at the punishment hearing.  That case, however, is clearly distinguishable.  Torres pled guilty to aggravated robbery that was committed by himself and his companion.  In the course of that robbery one of the robbers pulled a gun and shot the female victim three times in the chest.  The victim identified Torres as the robber who shot her both prior to trial and at the punishment hearing.  Torres trial counsel, however, did not present ballistic evidence in mitigation that showed that he was not the shooter, but rather the shots had been fired by his companion.

Torres' counsel testified at the motion for new trial hearing that he did not present that evidence because the State had suggested that the two robbers might have switched guns.  The Court of Appeals noted that Torres only mitigation was that he was not the one who had shot the victim of the robbery.  Counsel also failed to cross examine the victim about her identification of Torres as the shooter because he did not want her to "feel bad" and believed that she had gone through enough.  The record was totally devoid of the evidence that Torres was

not the shooter. *Torres* slip op. at page 7-8. The conviction was reversed for ineffective assistance of counsel.

Under the facts of the present case, however, the ballistics report in no way indicated that the Appellant did not commit the alleged act clearly dangerous to human life in the course of the commission or attempted commission of aggravated assault that caused the death of the victim. The identity of the Appellant as the person who caused the death of the victim by shooting him with a gun was never at issue. All the Appellant notes about the ballistic report was that it mentioned in passing that in test firing the weapon a malfunction in the quarter-cock safety was discovered. Given the offense of which the Appellant pled guilty, it is difficult to see how that evidence would be mitigation at all, much less such that might reasonably have produced a different result on sentencing.

The Appellant's act clearly dangerous to human life was the waving, pointing, and threatening the victim with a loaded gun. How could a malfunction in the safety on quarter-cock mitigate that act? The Appellant's actions with the gun were no less clearly dangerous to human life even with a possible malfunction of the weapon. In fact, if

anything, his actions were more dangerous to human life if that was the case.

The Appellant was not convicted of intentionally or knowingly causing the death of the victim, in which case an accidental discharge due to a malfunction of the weapon would undoubtedly be mitigating. However, no such culpable mental state was required for the felony murder of which the Appellant was convicted.

The Appellant admitted that he was committing or attempting to commit the felony offense of aggravated assault and, in so doing, he committed or attempted to commit an act clearly dangerous to human life by waving, pointing, and threatening the victim with a loaded gun. He also admitted that he caused the death of the victim as a result of those actions. Even if the gun had a partially defective safety, that would neither change the nature of the offense nor mitigate or excuse his conduct. The trial court, who assessed punishment in the first place, clearly did not find that the evidence that it heard on the motion for new trial would be reasonably likely to have changed the result. Otherwise the court would not have denied the motion. The court did not abuse its discretion in doing so.

19

The Appellant has wholly failed to satisfy his burden to show that his trial counsel rendered ineffective assistance at the punishment hearing of the trial as well as that, but for that ineffective assistance, the trial court would have been reasonably likely to have assessed a different sentence.

# PRAYER

The State of Texas respectfully prays that the judgment of conviction herein be, in all things, be affirmed.

Respectfully Submitted,

HENRY GARZA
District Attorney

/s/ *Bob D. Odom*

BOB D. ODOM
Assistant District Attorney
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

# CERTIFICATE OF COMPLIANCE WITH RULE 9

This is to certify that the State's Brief is in compliance with Rule 9 of the *Texas Rules of Appellate Procedure* and that portion which must be included under Rule 9.4(i)(1) contains 3,128 words.

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this brief has been served upon, James H. Kreimeyer, Counsel for Appellant, by electronic transfer via Email, addressed to him at jkreime@vvm.com on this 14th day of December, 2015.

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney